FILED
MAY 10 2011

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| TYLER BIRKES and SCOTT PRESTON, | Case No.: 09-CV-1084-AC |
| Plaintiffs, | OPINION AND ORDER |
| v. | |
| TILLAMOOK COUNTY, by and through the Tillamook County Sheriff's Office, a municipal corporation of the State of Oregon, a political subdivision of the State of Oregon, and JAMES HILL, in his individual and official capacity, | |
| Defendants. | |

ACOSTA, Magistrate Judge:

*Opinion*

This lawsuit is the outcome of an interaction between plaintiffs Tyler Birkes ("Birkes") and Scott Preston ("Preston")(collectively "Plaintiffs"), and defendant James Hill ("Hill"), who was

Page 1- OPINION AND ORDER                                      {SIB}

acting in his capacity as a Deputy of the Tillamook County Sheriff's Office, in a campground in Tillamook County (the "County"). During the interaction, Hill shot and killed Preston's pit bull Chopper ("Chopper"), and allegedly shot at Birkes as well.

Plaintiff filed this action against Hill and the County (collectively "Defendants") asserting constitutional claims for unlawful arrest and seizure of Birkes and Chopper and unreasonable use of force against Birkes, and common law claims for the assault of Birkes and conversion of Chopper. Defendants move for partial summary judgment asserting that: 1) the killing of Chopper was lawful or, in the alternative, protected by qualified immunity; 2) Plaintiffs are unable to state claims for constitutional violations under the Fourteenth Amendment; 3) only the County is liable on common law claims if Hill was acting in the course and scope of his employment; and 4) Preston is unable to support his common law claim for conversion of Chopper. Plaintiffs concede that they are unable to assert claims under the Fourteenth Amendment and that only the County can be held liable on the common law claims. Accordingly, Plaintiffs are ordered to file an amended complaint without these claims.

In light of Plaintiffs' concessions, the only matters remaining before the court are Preston's claims based on the shooting and death of Chopper. The court finds that Hill reasonably believed he was in imminent danger of physical injury at the time he shot Chopper and that Defendants are entitled to summary judgment on Preston's unlawful seizure and conversion claims.

*Preliminary Procedural Matters*

The evidence presented in support of or in opposition to a motion for summary judgment must be based on personal knowledge, properly authenticated and admissible under the Federal Rules of Evidence. FED. R. CIV. P. 56(c)(4). "The requirement of authentication * * * as a condition

precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." FED. R. EVID. 901(a). Evidence that is not properly authenticated will not be considered by the court when reviewing a motion for summary judgment. *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002).

Plaintiffs offered excerpts of the depositions of Birkes, Preston, and Hill. Birkes and Preston identified the excerpts of their respective depositions in their declarations and Plaintiffs' counsel identified the excerpts of Hill's deposition in her declaration. The Birkes excerpts identify Birkes as the deponent on the top of the page but do not identify the action or include a signed reporter's certification. The Preston excerpts identify the case and Preston as the deponent on the top of the page but do not include a reporter's certification. The Hill excerpts contain no identification of the party being deposed or the action for which the deposition is being taken and do not include a reporter's certification.

The Ninth Circuit stated in *Orr* that:

> A deposition or an extract therefrom is authenticated in a motion for summary judgment when it identifies the names of the deponent and the action and includes the reporter's certification that the deposition is a true record of the testimony of the deponent. See Fed. R. Evid. 901(b); Fed. R. Civ. P. 56(e)[1] & 30(f)(1). Ordinarily, this would be accomplished by attaching the cover page of the deposition and the reporter's certification to every deposition extract submitted. It is insufficient for a party to submit, without more, an affidavit from her counsel identifying the names of the deponent, the reporter, and the action and stating that the deposition is a "true and correct copy." Such an affidavit lacks foundation even if the affiant-counsel were present at the deposition.

*Orr*, 285 F.3d at 774 (footnote and case citations omitted). Clearly, Plaintiffs' deposition excerpts are not properly authenticated under the requirements set forth in *Orr*.

---

[1] The Ninth Circuit referenced the version of Rule 56(c)(4) in effect at that time.

Defendants, however, have offered and properly authenticated excerpts from the depositions of Birkes and Hill, thereby providing the basis for their admissibility. In *Orr*, the Ninth Circuit held that:

> when a document has been authenticated by a party, the requirement of authenticity is satisfied as to that document with regards to all parties, subject to the right of any party to present evidence to the ultimate fact-finder disputing its authenticity.

*Orr*, 285 F.3d at 776. The deposition excerpts offered by Plaintiffs from the Birkes deposition are consistent, both in content and appearance, with the properly authenticated excerpts offered by Hill. While the deposition excerpts from the Hill deposition do not contain any identifying features, it is clear from comparing the excerpts offered by both parties that the excerpts are from the same deposition. Accordingly, Plaintiffs' excerpts from the Birkes and Hill depositions are properly authenticated through Defendants' submissions.

Defendants did not offer any excerpts of the Preston deposition. Therefore, the excerpts submitted by Plaintiffs from the deposition of Preston are not properly authenticated or admissible. Consistent with its practice in prior cases in which a party has failed to properly authenticate deposition excerpts, including *Chao v. Westside Drywall*, 709 F. Supp. 2d 1037 (D. Or. 2010), and *Kesey v. Francis*, No. CV. 06-540-AC, 2009 WL 909530 (D. Or. April 3, 2009), this court strikes the Preston deposition excerpts and will not consider them in this Opinion.

In their reply brief, Defendants assert relevance objections to a large portion of the evidence offered by Plaintiffs. At the summary judgment stage, the court must look at the evidence presented to it by the parties and, initially, determine if there is a genuine issue of material fact. While engaging in this task, the court must necessarily apply the underlying summary judgment standard when it encounters evidence that is irrelevant, speculative, ambiguous, argumentative, or constitutes

a legal conclusion exclusively within the purview of the court's consideration. *See Burch v. Regents of Univ. of California*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal 2006)(noting that various evidentiary objections, such as relevance, were redundant at the summary judgment stage where the court can award summary judgment only in the absence of a genuine issue of material fact based on evidence the contents of which must be admissible). It is a waste of the court's time to analyze Defendants' objections to the evidence on any of these grounds independently of its consideration of the merits of the underlying summary judgment motion. Accordingly, these issues will not be independently addressed but will be considered in conjunction with the summary judgment determination.

*Background*

In late June, 2008, Plaintiffs, along with several friends and Chopper, were camping in a County forest. (Birkes Decl. ¶ 2.) On June 22, 2008, Hill, who was then on duty, received a complaint from another camper that several campers staying at an adjacent campsite were driving ATVs through her campsite at all hours the previous night. (Hill Dep. 10:8-18, 19:23-20:1.) While talking with the camper, Hill heard, and then saw, three ATVs traveling on the highway. (Hill Dep. 10:19-21.) Hill drove to where ATVs were parked, parked his truck, and started walking to a point where he could see down into Plaintiffs' campsite. (Hill Dep. 20:7-11, 27:19-28:5, 33:18-23.) The parties' versions of what happened next differ dramatically.

Hill testified that as he approached the campsite, he saw one male walking down into the campsite and several more people gathered around a car. (Hill Dep. 35:25-36:9). At this point, Hill saw Chopper, who was unleashed, walk around to the front of the car and stop between two males. (Hill Dep. 36:15-17, 37:7-9.) Hill identified himself as a deputy and instructed the group to control the dog. (Hill Dep. 37:9-10.) One male tried to grab Chopper as he started moving up the hill

toward Hill, who was backing away from Chopper. (Hill Dep. 38:2-4, 14-18.) Hill ordered the group once or twice more to control Chopper (Hill Dep. 38:22-39:4) Hill stated that Chopper was approaching him fast, at a dead run, growling, with the hair on his back standing up and his teeth showing. (Hill Dep. 41:21-42:14.) He drew his weapon when Chopper was ten to fifteen feet away from him (Hill Dep. 42:18-20.) Then, as Chopper came within one to two feet of his left thigh, Hill used his left hand to push Chopper away from him, felt Chopper's lips on the back of his hand, pulled his right hand around, and shot twice[2] down at Chopper in into the ground. (Hill Dep. 46:8-14, 47:13-16.) Hill explained that he fired because he considered Chopper to be capable of serious physical injury and was in fear that Chopper was going to bite him. (Hill Dep. 53:14-20.)

Birkes testified that he was near a fallen log and was cleaning up after lunch, and that he started walking up the hill toward Hill when he saw him approaching and asked if there was a problem. (Birkes Dep. 76:4-7; 91:1-24.) At this point, Birkes was between Hill and the car. (Birkes Dep. 90:23-92:8; 94:1-25; Edenhofer Decl. Ex. 4.) Birkes stated in his declaration that Chopper was walking toward Hill and was not exhibiting any threatening behavior but testified in his deposition that Chopper was both walking and running toward Hill. (Birkes Decl. ¶ 5; Birkes Dep. 76:13-15; 107:8-12.) Hill drew his firearm on Birkes as Chopper reached Birkes and brushed his leg. (Birkes Dep. 76:7-15.) Birkes noticed Hill was looking at Chopper, who was having a "negative reaction" to the sound of Birkes' voice and the drawn weapon, and asked Hill to not shoot Chopper but to let him get Chopper. (Birkes Dep. 76:15-17; 107:8-12.) Hill ordered Birkes once or twice to get Chopper and as Birkes was bending down to get Chopper, Chopper bolted and started running to the right. (Birkes Dep. 76:19-22; 102:17-24.) Birkes dove in attempt to grab Chopper but missed and

---

[2] A necropsy revealed that only one bullet hit Chopper. (Burrows Decl. Ex. 3.)

when he looked up, he was staring down Hill's gun. (Birkes Dep. 76:22-25.) Birkes "covered up" and heard Hill fire his gun. (Birkes Dep. 77:1-2.) Birkes stated the bullet barely missed him and he thought Hill was trying to kill him. (Birkes Decl. ¶ 5; Birkes Dep. 94:7-10.) Birkes saw Chopper come at Hill after the first shot, Hill push and knock over Chopper, and Hill fire his gun at Chopper. (Birkes 84:9-25; 10:21-23; 104:2-7, 22-23.) Chopper was on his feet facing Hill about six or seven feet away from Hill when he was shot. (Birkes 84:9-11, 23-25; 106:2-3.) Hill then backed up to his truck, got inside, and waited for backup. (Birkes Decl. ¶ 7.) Birkes, Preston, and others got Chopper into a car and attempted to leave to get help for Chopper but were stopped by officers seeking information from everyone at the scene. (Birkes Decl. ¶ 7.) After providing their names, the officer allowed them to leave but Chopper died in the car shortly thereafter. (Birkes Decl. ¶ 7.)

Birkes testified in his deposition that Chopper hated guns and likely ran at Hill because he was "freaked out" by the first gun shot. (Birkes Dep. 104:2-6; 108:17-109:4.) He also stated he thought Chopper jumped at Hill after the first shot, which caused Hill to backhand and then shoot Chopper. (Birkes Dep. 84:23-85:9.) However, Birkes stated in his declaration that Chopper merely circled behind Hill and never growled, snarled, or demonstrated any aggression toward Hill. (Birkes Decl. ¶ 6.) Other individual present at the campsite stated that Hill did not identify himself as a police officer and that while Chopper ran toward Hill, he was not being aggressive in any way. (Preston Decl. ¶ 5; Gutierrez Decl. ¶ 3; Hartenberger Decl. ¶¶ 2-3.)

### Legal Standard

Summary judgment is appropriate where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (2010). Summary judgment is not proper if material factual issues exist for trial. *Warren v.*

*City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324. A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements. *Hernandez v. Spacelabs Medical, Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Thus, summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of North America*, 638 F.2d 136, 140 (9th Cir. 1981).

However, deference to the nonmoving party has limits. A party asserting that a fact cannot be true or is genuinely disputed must support the assertion with admissible evidence. FED. R. CIV. P. 56(c) (2010). The "mere existence of a scintilla of evidence in support of the [party's] position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574,

587 (1986) (internal quotations marks omitted).

*Discussion*

Preston alleges that Hill violated his Fourth Amendment right to be free from unlawful seizure of his property. In support of this claim, Preston alleges that Hill's actions unreasonably "precipitated" the shooting and death of Chopper. (Compl. ¶ 36.) Preston also asserts a claim for common law conversion based on Hill's exercise of dominion and control over Chopper and the resulting interference with Preston's right to control and enjoy his property. (Compl. ¶ 48.) Defendants move for summary judgment on both claims arguing that the facts presented do not support either claim. In the alternative, Defendants assert that Hill is entitled to qualified immunity on Preston's Fourth Amendment claim.

I. Unlawful Seizure

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." A "seizure" of property occurs whenever "there is some meaningful interference with an individual's possessory interests in that property." *Soldal v. Cook County, Ill.*, 506 U.S. 56, 61 (1992). The destruction of property, including the killing of a dog, is considered "meaningful interference" and qualifies as a seizure under the Fourth Amendment. *Fuller v. Vines*, 36 F.3d 65, 68 (9th Cir. 1994), *overruled on other grounds*, *Robinson v. Solano County*, 278 F.3d 1007, 1013 (9th Cir. 2002).

To succeed on a Fourth Amendment claim for unlawful seizure, a plaintiff must not only show that a seizure occurred, but also that the seizure was unreasonable. *Brower v. County of Inyo*, 489 U.S. 593, 599 (1989). A court must consider the totality of the circumstances and balance "the nature of the quality and quantity of the intrusion on the individual's Fourth Amendment interests

against the countervailing governmental interests at stake" to determine whether the force used to effect a particular seizure was reasonably necessary. *Graham v. Connor*, 490 U.S. 386, 396 (1989)(internal quotations and citation omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.* at 396-97. Fourth amendment claims are reviewed for objective reasonableness because the subjective intent of the defendant is irrelevant. *Brower*, 489 U.S. at 599.

The primary governmental interest to be considered in a Fourth Amendment claim based on the shooting of a dog is the safety of the officer. *San Jose Charter of the Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 977 (9th Cir. 2005)(governmental interest of safety may provide "sound justification" for officer's conduct in shooting dog). Where danger is unexpected and imminent, or dogs are allowed to run free, unleashed, uncontrolled, and unsupervised, the balance tips in favor of the governmental interest. *Id.* (had officers been surprised by presence of dogs, safety may justify shooting); *Hatch v. Grosinger*, No. Civ.01-1906(RHK/AJB), 2003 WL 1610778, at *5 (D. Minn. March 3, 2003)("The balance of these interests depend on whether an objectively reasonable officer in the position of Deputy Grosinger could conclude that the Hatches' dog posed an imminent threat."); *Altman v. City of High Point*, 330 F.3d 194, 205 (4th Cir. 2003)("When a dog leaves the control of its owner and runs at large in a public space, the government interest in controlling the animal and preventing the evils mentioned above waxes dramatically, while the private interest correspondingly wanes."). On the other hand, "the private Fourth Amendment possessory interests are obviously stronger when, although the dog is unleashed,

the owner is nearby and attempting to assert control over the dog." *Id*. at 207.

The facts viewed in the light most favorable to Preston are that Hill approached the campsite and first became aware of Chopper, an unrestrained pit bull, when the dog walked from behind a car and stopped between two males. Birkes approached Hill and started a conversation. At this point, Chopper, having a negative reaction to the unholstered gun and the tone of Birkes' voice, moved toward Hill. Hill directed the group to "get" Chopper two or three times but, despite attempts to grab him, Chopper eluded capture and continued to move quickly toward Hill. Chopper became agitated when Hill fired the first shot and "came at" Hill causing Hill to push him to the ground with his left hand. When Chopper, who was six or seven feet from and facing Hill, regained his footing, Hill shot him and Chopper later died.

These facts are substantially similar to those presented in *Warboys v. Proulx*, 303 F. Supp. 2d 111 (D. Conn. 2004), in which the court found the killing of the dog to be reasonable. In *Warboys*, three officers and a trained police canine were in a parking lot allowing the police canine to identify a scent that might have been that of the fleeing car theft suspect they were tracking. *Id*. at 113. The officers saw a young male leaving an adjacent residence and advised him to return to the residence for safety reasons. *Id*. at 114. Blitz, the family pit bull, who weighed about ninety-five pounds, escaped through the open door and moved toward one officer and the police canine. The young male attempt to grab Blitz as he went by but missed and then yelled to the officers that Blitz wouldn't hurt them. As Blitz approached the officer, he unholstered his gun, shot and killed the dog. Blitz was five to ten feet from the officer at the time he was shot. The whole event occurred in about five seconds. *Id*.

On summary judgment, the court accepted the following additional facts offered by the

plaintiff as true. Blitz was not barking or growling but rather emerged from the house in a friendly manner wagging his tail and was a gentle, loving pet that had never attacked an animal or human.

*Id.* The court then held:

> Based on the undisputed facts recited above, when taken in the light most favorable to Warboys, Proulx acted reasonably in shooting Blitz. An officer who encounters a 90- to 100- pound pit bull dog – a dog which is demonstrably not able to be restrained by its owner or guardian and which is approaching the officer at a rate of 6 feet per second and is at a distance of no more than ten feet – does not act unreasonably in shooting the dog in order to protect himself and his canine companion.
>
> The court acknowledges that Blitz may indeed have approached the officer and his police canine merely to greet and sniff them or to receive a friendly pat on the head.. At the same time, however, the court notes that had Proulx refrained from shooting the pit bull when he did and had Blitz's behavior turned out to have been hostile, it would have been too late for Proulx to use his firearm safely in order to defend himself and his police dog. Had Proulx refrained from shooting and instead had to defend himself from Blitz by other means in close range attack, the risk or serious injury or death to him and his canine would have been considerable. Based on these facts, this court concludes that the law did not require Proulx to wait until the approaching animal was within biting distance or was leaping at him before taking protective action. The fact that the approaching dog was a pit bull is another factor that supports the court's conclusion that it was objectively reasonable for Proulx to have responded to the situation as he did.
>
> The law simply does not require a reasonable officer in Proulx's circumstances to have used less force to protect himself, his police dog, and the officers standing nearby.

*Id.* at 117-19 (citations and footnotes omitted). The court relied, at least in part, on the fact that Blitz was a pit bull, that pit bulls are a dangerous breed, and that their aggressiveness may be undetectable. *Id.* at 118 n.13.

Two years later, the same court found an officer acted reasonably in shooting a sixty-pound dog who, while running in circles, was advancing toward the officer at a rate of three feet per second over a five second period, when the dog was fifteen feet away from the officer. *Dziekan v. Gaynor*,

376 F. Supp. 2d 267, 271-272 (D. Conn. 2005). The court concluded that "[i]n light of the important interest in the defendant's self-protection, and the split-second decision-making required, the seizure was not an unreasonable intrusion on plaintiff's Fourth Amendment rights." *Id.* at 272.

The district court in these cases relied on language from *San Jose Charter* and *Fuller*, both opinions from the Ninth Circuit, in which the court held the officer actions were not reasonable under the circumstances. The Ninth Circuit cases are easily distinguishable from the Connecticut cases and the case at hand. In *San Jose Charter*, the dogs were killed during the execution of search warrants that had been issued at least a week prior to the operation. *San Jose Charter*, 402 F.3d at 968-69. The Ninth Circuit held that because the officer knew of the dogs and had an opportunity to devise a plan to immobilize the dogs, the killing of the dogs was unreasonable. *Id.* at 977. No such preplanning was possible in either the Connecticut cases or the case at hand. The evidence presented by the plaintiff in *Fuller* established that at the time of the shooting, the plaintiffs were in their front yard with their dog and that the dog merely stood as officers approached. *Fuller*, 36 F.3d at 66. The court held that this evidence was sufficient to foreclose summary judgment on the Fourth Amendment claim. *Id.* at 68. The dogs at issue in this and the Connecticut cases were approaching the officers at a brisk pace, not standing in their own yard with their owners close by.

Here, Hill was faced with a pit bull moving toward him in a rapid manner which the dog's guardian could not restrain. Under *Warboys* and *Dziekan*, these facts are enough to establish that Hill acted reasonably. However, the evidence also establishes Chopper was agitated, that he "came at" Hill, and that he was quickly back on his feet and five feet away from Hill when Hill shot him. Based on this scenario, the court finds Hill reasonably believed he was in imminent danger of physical injury from Chopper at the time he fired his weapon at the dog. Accordingly, Hill's actions

did not violation Preston's Fourth Amendment rights. Hill's motion for summary judgment on this claim is granted.[3]

Preston argues that Hill provoked Chopper when he pointed his gun and shot at Birkes and, therefore, created the need to use deadly force on Chopper. The Ninth Circuit has held that if "an officer intentionally or recklessly provokes a violent response, and the provocation is an independent constitutional violation, that provocation may render the officer's otherwise *reasonable* defensive use of force *unreasonable* as a matter of law." *Billington v. Smith*, 292 F.3d 1177 (9th Cir. 2002). In *Billington*, an officer was engaged in hand-to-hand combat with a suspect resisting arrest and attempting to gain possession and control of the officer's gun when he shot and killed the suspect. *Id.* at 1180-1181. The personal representative of the decedent filed an action asserting an excessive force claim against the officer. The plaintiff argued that while the officer may have acted reasonably in shooting the decedent, the officer's tactical errors, such as initiating a stop while in plainclothes with his family in an unmarked car, approaching the suspect with a flashlight and his gun occupying both hands, attempting to ascertain the extent of injuries to the suspect who had run his car off the road before backup arrived, and not wearing his duty belt with spray, handcuffs, holster and baton, created the need to use deadly force and made such force unreasonable. *Id.* at 1186. The court rejected the argument, holding that the evidence did not establish that the officer provoked the attack by the suspect and that none of the officer's tactical errors "could be deemed intentional or reckless, much less unconstitutional, provocations. . . ." *Id.* at 1191.

In the second case relied on by Preston, police officers, who were assisting in the execution

---

[3]As the court has determined there was no constitutional violation, it need not, and will not, address whether Hill is entitled to qualified immunity. *See Pearson v. Callahan*, 555 U.S. 223 (2009)

Page 14- OPINION AND ORDER                                                                 {SIB}

of a forcible entry warrant issued to the public health department to inspect the property for code violations, stormed the property and shot and killed the resident. *Alexander v. City and County of San Francisco*, 29 F.3d 1355, 1358 (9th Cir. 1994). The resident, a mentally ill, elderly, half-blind recluse who had previously threatened to shoot anyone who entered the property, fired his gun when seven officers, five with guns drawn, broke down his door and entered his residence. *Id.* at 1358, 1366. The officers returned fire and killed the resident. *Id.* at 1358. The executor of the decedent's estate asserted an excessive force claim against the officers arguing that the officers violated the decedent's fourth amendment rights when they entered the house to arrest him without an arrest warrant and that the such action created the situation that caused the decedent to react aggressively. *Id.* at 1360, 1366. The court denied the officers' motion for summary judgment on this claim finding that a genuine issue of material fact existed with regard to the officers' purpose in storming the house and whether the force used was reasonable to effect that purpose. *Id.* at 1366.

These cases are distinguishable from that currently before the court. Here, Plaintiffs allege that Hill violated Birkes' Fourth Amendment rights when he drew his weapon on and allegedly fired at Birkes, and assert that by doing so, Hill intentionally provoked Chopper's response. In *Billington* and *Alexander*, the officer was accused of provoking an aggressive response from the individual eventually shot and killed by violating the constitutional rights of that individual. Here, Hill is accused of provoking a response not from Birkes, the individual whose constitutional rights were initially violated, but from Chopper, an independent party to the initial alleged constitutional violation. Additionally, in the cases relied on by Plaintiffs, the officer shot a person protected by the Constitution, not an animal not entitled to such protection. Finally, nothing in the cases cited by Plaintiffs suggests that the analysis applied in those cases may or should be applied to determining

Page 15- OPINION AND ORDER {SIB}

an unlawful seizure allegation based on the shooting of a dog, and none of the cases cited by the parties involving that specific situation cite as a factor whether the officer provoked the dog into the actions which resulted in the officer's decision to shoot the dog. Accordingly, the court finds that *Billington* and *Alexander* are not relevant to this action and do not change the conclusion that Hill is entitled to summary judgment on this claim.

II. Conversion

Preston also alleges a common law claim for conversion based on Hill's shooting of Chopper. Apparently conceding that Hill's actions constitute a conversion under Oregon law, Defendants argue only that Hill was justified in shooting Chopper and, therefore, is not liable for conversion. Defendants do not provide any case law supporting this argument.

A federal district court in California recently granted summary judgment on a conversion claim against a police officer for the killing of a dog, relying on the privilege of self-defense described in Section 261 of the RESTATEMENT (SECOND) OF TORTS. *Perez v. City of Placerville*, No. CIV S-07-927 FCD GGH, 2008 WL 4279386, at *8 (Sept. 9, 2008)(conduct of officer who killed dog in self defense of partner is privileged under state law and does not give rise to claim of conversion of chattels). Section 261 of the RESTATEMENT (SECOND) OF TORTS (1965) provides that:

> One is privileged to commit an act which would otherwise be a trespass to or a conversion of a chattel in the possession of another, for the purpose of defending himself or a third person against the other, under the same conditions which would afford a privilege to inflict a harmful or offensive contact upon the other for the same purpose.

The Oregon courts have not specifically adopted Section 261 but as recently as last month, an Oregon court relied on the definition of conversion found in section 222A(1) of the

RESTATEMENT (SECOND) OF TORTS (1965). *Briggs v. Lamvik*, No. 080709806; A141436, 2011 WL 1410064, at *5 (Or. App. April 13, 2011). Additionally, Oregon courts recognize the defense of self-defense in intentional tort cases. *See Bray v. American Prop. Mgmt. Corp.*, 156 Or. App. 356, 361 n.3 (1998)(court instructed jury on self-defense in wrongful death case); *Royer v. Wendland*, 261 Or. 1 (1971)(court found jury was properly instructed on self-defense in action at law for assault and battery).

Based on their reliance on the RESTATEMENT for the definition of conversion and their recognition of the defense of self-defense against claims for intentional torts, the court is confident that the Oregon courts would allow the application of the self-defense privilege with regard to conversion found as set forth in Section 261 of the RESTATEMENT. Applying the self-defense privilege to Preston's conversion claim and the facts at hand, the court finds that Hill's actions were privileged. Defendants are entitled to summary judgment on Preston's claim for conversion.

*Conclusion*

Defendants' motion (#26) for summary judgment on Preston's claims for unlawful seizure and conversion of Chopper is GRANTED. Based on Plaintiffs' concession that they are unable to assert claims under the Fourteenth Amendment and that only the County can be held liable on the common law claims, Defendants' motion for summary judgment on these claims are GRANTED as well and Plaintiffs are ordered to file an amended complaint removing these claims.

DATED this 10th day of May, 2011.

JOHN V. ACOSTA
United States Magistrate Judge